I'm just going to call the first case and when the case is called, I'd like you to identify yourselves for the record first off as you stand here and then you can mention your name when you come up again so we have the record very clear. We'll give you plenty of time to make your arguments. We're not going to be short on time, that's for sure. The rules say 20, but I don't know if you need to take 20, so you decide. Nothing more than 20, though, certainly. All right, we ready to call the first case? Mikva versus Fountain. Before you say your name, counsel, I just wanted to say you see an empty chair here. Justice Mikva is unavailable for today, but rest assured she has read all the briefs and is acquainted with the cases and the facts of this case and she will be reviewing this oral argument in a short period of time, so just to get that on the record. Thank you. Counsel, good morning. Your name, please. Good morning, Ms. Cordes. This is Mr. Justin Cordes on behalf of Mikva. Thank you, Ms. Cordes. Doug Johnson, on behalf. Mr. Johnson. I'm very pleased to be here. Thank you very much. And are you ready to proceed, counsel? Yes, ma'am. If you would, please. You may have placed the court. My name is Doug Johnson on behalf of the defendant, Ricky Fountain. Ricky Fountain is currently serving 21 years for the attempted murder conviction in this case. I'd like to start, actually, our issues are quite related with one another, but I'd like to start with Issue 3 because I think that's the clearest and most obvious way to dispose of this case. I am going to argue that the evidence was insufficient. I know that's a hard burden at this point. I understand that we have to show that a reasonable doubt lingers, that the evidence was so improbable, unreasonable, no verdict should stand. But if you look at the evidence, if you look at Mr. Harris and what Mr. McKinney said, either before the trial, at the trial, or in Mr. Harris's case, in his do-over on the next day of the trial, all they ever did was put Ricky in the car driving. And that is simply not enough. Nothing in anything they said, and Mr. Fountain didn't testify, Mr. Hill didn't testify, there is nothing, there's nobody else in the car. All they put was Ricky driving the car. The Supreme Court's decision in Taylor, I believe, ends this case. In Taylor, the defendant said I was driving the car, but the co-defendant told me to stop, so I did. The evidence showed the co-defendant said stop the car. The defendant then stayed in the car while the co-defendant got out and shot at the couple, got back in the car, and then took off. Is this more of the accountability argument versus the sufficiency? Well, the evidence was insufficient to find him accountable. No one ever said he held the gun or saw the gun. Absolutely. And this is the issue three about, we kind of specified it and laid out about the accountability. In Taylor, there was a lot more evidence. Wait a minute, that defendant stopped the car because the co-defendant said stop. There's no evidence here that Mr. Hill said Ricky, stop the car. Secondly, in that case, the defendant knew the co-defendant had a gun. He knew. There's no evidence here that Ricky knew Mr. Hill had a gun. Well, let's talk about how you prove accountability. You can either show intent, which we don't have here, right? And common design is the second one. Correct. So as far as the steps to prove a common design, let's go through those and tell me why they don't apply. All right. First of all, defendant's presence at the scene. Okay. That's the first one. We have that. Defendant's connection to the offender. What do we know? He was driving the car. Mr. Hill was in the car. Well, wasn't there testimony from, or statements at least, from the victim and the other witness that those persons knew each other? Even the victim said that he'd known both of these people for a while. Well, if they knew each other, I suppose, sure, they may have known each other. Now, this gets into whether we can believe a single thing Mr. Harris said, which we can't. And I understand, but let's just go through what we have in the evidence. Okay. So we take McKinney. Maybe McKinney said, Harris is my cousin, and he may have said, I've known Fountain. I don't know if he put Mr. Hill and Mr. Fountain together. They were in the car. Even assuming they knew each other, I don't think that's a connection. You know, there's no gang issue here. This isn't a, that came out. So I don't believe there's any connection that suggests a common design between these two people, other than they're both in the car, if you believe the State's witnesses. So you're saying there's no evidence that shows there's a connection between the shooter and the person sitting out? Oh, now we get to the connection between the shooter and the victim? No, no, no, the shooter and the other person in the car. Okay. I don't believe there's any evidence connecting them that matters when one considers the common design test. Okay. What about the failure to report? I, the failure, there was no report. I don't believe it's enough to justify a common design. I would get to Fernandez's case, but I will go through the factors. All right. And then flight from the scene. Don't believe there was any evidence of a flight from the scene. They turned off. It's almost a catch-22. If they follow, if Mr. Fountain, you believe he's driving. If they follow Mr. Harris, then you have, well, he's accountable. He followed him, and they were trying to shoot him again. No, if you look at what happened immediately, if you believe the evidence, turned off. So I don't know if that's flight from the scene. He turned off. I will agree he did not report. All right. Continue. Common design. So it does seem, I believe, that the State has sort of agreed there's no intent, the first prompt. They didn't, I believe the State concedes perhaps there was no accountability under aiding and abetting. But what about common design? And they cite the Fernandez case. Common design. In Fernandez, this is a case they cite. In Fernandez, the defendant and the co-defendant agreed, let's go do a burglary. Of course, that's common design. They agreed to commit a crime. Here there is nothing that suggests Mr. Fountain and Mr. Hill decided to commit a crime. All we have is Mr. Fountain driving. And look at the way the State characterized the evidence in this case. I just want to state the conclusion of the Taylor Court first. A person cannot be deemed accountable for acquiescing in the criminal activities of another. On page 36 of its brief, the State summarizes the evidence as this. And I think it's an accurate summary somewhat. Defendant was accountable for the conduct of his accomplice Hill when defendant and Hill engaged in a criminal design and defendant approached Harris as he drove in his van, stopped within two feet of Harris' van, and allowed Hill to lower the window, raise a gun, and shoot at Harris. Allowed Hill. There is no evidence he allowed Hill to do anything. There's no evidence he knew what Hill was going to do. At most, at most, even if you believe he was driving the car, which we vehemently oppose, disagree with, there's no evidence he allowed Hill to lower the window. We don't even know if he was looking at Mr. Hill. All we had from the completely unbelievable testimony of Mr. Harris, who the trial judge basically said is unbelievable in his first part of his decision, and Mr. McKinney is that he was driving the car. So for those reasons, Issue 3, as Your Honor pointed out, there was no account, asking about is this the accountability argument. Yes, it is. There was no evidence of accountability. Now, there was also a limitation in our fourth issue where we talked about was, where we said that there was an improper limitation of the cross-examination here. As this Court is well aware, cross-examination, I believe, my interpretation is that cross-examination, a lot of latitude has to be given. We are allowed to confront the witnesses against us, and we are able to show, explain, qualify, discredit, show a motive for a witness to testify falsely against our defendant. Now here, Mr. Harris, the information was, and I think the parties agreed, the information was that Mr. Harris had shot twice at Mr. Fountain. Now, I really don't know if I can imagine more relevant evidence to show a motive to testify falsely. So Mr. Harris, this shooting occurs. Mr. Harris is, because of his medical condition, unable to identify anyone. Then later on, he identifies, allegedly, Mr. Fountain. Then he says to the defense attorneys in an affidavit, no, it wasn't Fountain. Then he comes to trial and he says it wasn't Fountain. Then he testifies in the do-over testimony. It was Fountain. And then we find out he shot. Harris has shot at Fountain. How can that be something that isn't allowed to be explored on cross-examination? Well, is there anything to the distinction that it happened after and not before? I understand the State makes that argument. I can't imagine. The point is it happened. It happened before this gentleman's trial testimony. That is something that should come out. Hey, tell me, especially in a bench trial, wait a minute, this guy that you're testifying against and trying to put away, you've tried to. You've fingered him in this crime before, and also previously you shot at him twice, tried to kill him. Maybe you have something you don't like about this guy. Let's figure out what it is. And there was no consideration of that. How can that not be relevant to some degree? Mr. Fountain wasn't allowed to put that out. And if you look at the Eberhardt case we talked about, in that case the police officer arrested the defendant. The police officer arrested him in trial too. And the defendant said, hey, I want to go back to what happened. This guy's trying to frame me because he tried to frame me before. And the trial court allowed some evidence in. They said, you can bring some of that up. But the appellate court, this court said, no, we didn't allow enough of that in. So there it was about a police officer who maybe wanted to, the defense theory was, frame this defendant because this defendant had filed a criminal complaint against him. And here we have, he shot at me. This guy's out to get me. Judge, don't you want to hear about that, to hear how this guy wants to put me away either behind bars or kill me? That seems to be a bias that should have been allowed. What's the effect if we agree that's error? What's the effect of that? The effect of that, unlike my first argument, is to reverse and remand for a new trial. But I don't think it has to get that far because I think this case is ARCOS. If we look at the ARCOS case, in that case that's where the trial judge said, the state's accuser is a thoroughly disreputable witness unworthy of belief. But then the trial judge said, but I'm going to believe the out-of-court prior statement of the accuser. And this court said, you can't do that. You can't say this guy's a thoroughly disreputable witness who can't be believed and then go say, but we're going to believe his first statement. So what's the trial court supposed to do? Believe nothing that comes out of that witness's mouth or statement? In this case, Mr. Harris, the trial court was right to say, and the trial court here did say, if we recall, it gets into our limitation on cross-examination. But the trial court said, I think that's why the judge did not allow in the shooting. He said, I heard Mr. Harris. I think what the point was is, you don't have to tell me any more about Mr. Harris. I think the implication is he's a liar. That's fine. And, yes, in this case, Mr. Harris should have been discarded. Now, I think actually if anything wasn't discarded, it's the point that Mr. Harris gave the defense attorneys prior to trial an affidavit that said he didn't do it. Well, my point is that if the trial court is confused, not confused, but has questions about the credibility of a witness, again, is it incumbent upon the trial court not to believe anything that was testified to from that witness? In general? Yeah. No. Not in general. Absolutely. If we didn't have the specific facts of this case, then the court has to weigh it. But here we have a judge who's made a conclusion, and this is why I think this case is different. We have a judge who's made a conclusion, just like in Arcos, I don't need to hear anything more. What he said, and if you look at it, is I don't believe this guy. So the problem is when he turned around and said, but I am going to believe his prior statement. Because if you look at Arcos, what they did is the trial judge said that, and the appellate court said that that's not right. We've got to look for other corroborative evidence. And interestingly, the trial court did not look at the police officer who took the statement in Arcos and say, you know, the police officer testified, and he did testify, he testified, and he said, I took the statement from the witness in Arcos, and I believe that he said that. But when the trial court, I'm sorry, the appellate court analyzed the statement, it said we're going to look for other physical evidence and really kind of analyze, is there anything else besides this statement, the statement of the witness or the statement of the police officer? And they found none. So does corroboration make any difference in the analysis? I believe in this context, I understand, I agree with the state that under the cases they cited, if a positive and credible witness comes forward and makes a prior statement, that's enough to make the evidence sufficient. But in this case, corroboration is everything because you have to throw out Harris and you have to look for physical evidence, anything else that we can say Fountain did this. Not just that it occurred, we agree Mr. Harris was shot, but is there anything else there that suggests Mr. Fountain aside from Harris' statement? And the only thing I submit is McKinney. Is McKinney's testimony sufficient to base this conviction on, is the only possibility under the law to base this conviction on beyond a reasonable doubt? And the answer to that question is absolutely not. Mr. McKinney, he disavowed his statement too. But his statement came in. But his statement came in. Now let's look at Mr. McKinney. When a police officer is testifying, I submit most of the time it's truthful. So we're going to pick, and we understand most of the time the police officer is going to win the credibility argument against the witness. But in this case, look what happened. Mr. McKinney allegedly is at the scene. This is the story told. He disavowed this, Mr. McKinney did, but this is the story the police officer told. Yet, this is the state's theory. He flagged us down. And then we took him in. And he told us Fountain and Hill did it. Yet, Fountain's not picked up. Hill's not picked up. They aren't questioned. And no report is generated. It is only months later that they bring McKinney in. And McKinney allegedly says these things. But McKinney says no. McKinney's a felon. He's got a long sheet. And he says no, they were threatening me. And so I just told them what they wanted and got out of there. And when he comes to trial, he says none of it was true. Didn't the officer say they didn't know these names before they were brought up by the person to give the statements? They didn't know these names. The officer, the guy, McKinney, they didn't know the names, exactly. They didn't know, and they didn't pick them up for months. So McKinney, if McKinney is fingering these people, how come they aren't picked up? Because it didn't happen. And when we're talking about proof beyond a reasonable doubt to hang on McKinney, as your Honor says, it came in. But that can't be enough. That gets into cases like Parker and Wise and Brown, disavowed prior statements. There has to be a little more. I submit to your Honor. All right. I'm going to sum up counsel for now. We'll give you a rebuttal if you want. Thank you, Your Honor. Okay, great. Thank you. Good morning, Your Honor. As it may please the Court, Assistant State's Attorney Justin Cordes on behalf of the people. A little louder and a little slower. I apologize, Your Honor. Assistant State's Attorney Justin Cordes on behalf of the people. Your Honor, as you're well aware, on July 15, 2009, the victim, Demetrius Harris, was driving and made a right-hand turn onto Colmar Avenue. He approached a stop sign at Van Buren, and as he was there, he saw the defendant make that same right-hand turn, pull up alongside of him, and stop at that stop sign. And now when the victim looked down into that vehicle, he saw two people. These were two people that he knew. The first person was the driver. This was the defendant. He knew the defendant because of the fact that the defendant had a child with the victim, Harris' sister. They had known each other, and this is what he testified to. He also knew the person sitting in the passenger seat, co-defendant Hill. He stated that he knew him for three to four years, and that he knew him from the neighborhood. And so at that point in time, while he stopped at the stop sign, he saw co-defendant Hill roll the window down, point a firearm at him, shoot eight times. As this occurred, the first who believed that the first bullet was the bullet that struck him, and he pulled off into the intersection. Well, at the same time, the defendant pulled into the intersection as well. He continued and allowed the co-defendant to continue to shoot him. He assisted this co-defendant in continuing to perpetrate this firing onto the victim's van. And the reason we also know that this occurred, Your Honors, is because of the fact that the evidence technician, Myron Selser, testified that he recovered bullet casings that were from the same gun that shot the van that Harris was in from the intersection. So this shooting just did not occur or stop at that stop sign. It continued into that intersection. And Harris continued to pull off, pull straight forward, and defendant veered off. Now, Your Honors. Is this, to your argument, a common design or just in general? Just in general, Your Honor. And so, Your Honors, after that incident occurred, the victim continued to drive off and saw a friend that was loaded on the street who took him to the hospital. So based on that factual scenario that you've just demonstrated, was that sufficient for a trier of fact to find beyond a reasonable doubt that the defendant here facilitated the crime? Yes, Your Honor. Because of the fact that in this situation, turning to Defense Counsel's Argument 3, we have a situation where defendant followed Harris to that stop sign, pulled alongside that vehicle at that stop sign, stopped, the window rolled down, pulled the firearm out, and shot into this car. Now, it seems unreasonable to think that someone could be concealing a firearm, roll the window down, at the same time pull it out, point it at the big car that's sitting next to him, fire multiple shots, and continue to do so as they're pulling into the intersection, pursuing the victim. Now, Your Honor, it just doesn't make sense that this defendant wasn't assisting his co-defendant in perpetrating this attempted murder. Can you distinguish Fernandez that your opponent claims should go the day here? Your Honor, in Fernandez, the difference between this case and my case is that in that factual scenario, the co-defendant and I, there were two individuals in the car. They stopped and, well, the defendant in that case asked the co-defendant who was driving to stop. He got out and exchanged words at that point in time, and then pulled out a gun and started firing at those individuals, and then ran back to the car and got in. And in that situation, these two cases are different. This is a situation where the defendant was pursuing the victim, stopped at a stop sign, and then also continued to pursue him into that intersection. Your Honor, with regard to counsel's argument four, with regard to precluding defense counsel from cross-examining the victim, Your Honor, I just want to be clear on this, that the victim gave his statement ten days after the shooting occurred. He gave it to the police and, again, gave a signed, written statement to another detective and another assistant state security. Now, eight months later, supposedly, the defendant claims that Eric shot him. However, the defendant, while he reported the crime, he never signed any kind of complaint. He never pursued that claim that the defendant actually shot him. My point is that the victim actually shot him. There was no evidence presented or even an awful proof made that there was going to be some sort of prove-up that the defendant had any sort of medical attention, medical treatment, with regard to any sort of shooting or anything of that nature. Furthermore, the trial court has wide discretion as to the type of evidence that is presented before the court. And this court should look not necessarily to what the defendant was prevented from doing, but to what the defendant was allowed to do. And in this situation, the defendant was allowed to cross-examine the witness, both on the first and second day of trial, with regard to these statements, and offer impeachment on the second day of trial, and flat-out call the victim a liar. The trial court stated that it was a bench trial. The trial court was aware of the fact that on these two instances, the defendant was making the claim that the victim shot him. The first instance was eight months after he gave his statement to the police, and the second instance was a year after he gave his statement to the police. Now, Your Honors, with regard to saying whether or not the trial court should have allowed this testimony to come in, that it was a bench trial, the evidence was before the court, and the court made the determination that this impeachment was unnecessary with regard to the fact that there was some sort of bad blood between the victim and the defendant. And furthermore, Did they actually ask to make an offer of proof on this, defendant? No, Your Honor. No. And also, the fact that there was bad blood between the victim and the defendant was testified openly from the victim at that time as well at trial. Let's say they were allowed that cross, and the defendant or the victim denied it. Then what happens? I mean, let's say they asked him on cross-examination. They were allowed to ask that question. Did you shoot it? And he said no. I mean, again, there was no offer of proof. How are they going to prove that that was correct, right? Correct, Your Honor. Okay. Thank you. And now, furthermore, with regard to the statements given by the victim and defense counsel's citing to Arcos, Arcos is a, oh, I apologize, Your Honor. If I may also address, I apologize, Your Honor. Averhart is what I would like to address with regard to point four as well. That's distinguishable in this case as well because of the fact that the encounter between the police officer and the defendant in that case at Averhart, there were two encounters. The first encounter occurred, and as a result of that trial, the defendant was acquitted. And now the police officer arrested the defendant a second time after that initial encounter and testified at trial. And at that point in time, the trial court refused to let in that evidence with regard to that previous incident. And it was found that the trial court should have allowed that evidence because of the fact that it demonstrated the police officer's bias. Now, these incidences that occurred occurred after the fact that the victim gave these statements to the police. So the fact that it occurred after is the distinction? Yes, Your Honor. Now, specifically with regard to Arcos and defense counsel saying that this case is Arcos, Your Honor, this case is not Arcos. Arcos is a situation where two and a half years after the murder occurred, a witness came forward and gave testimony that the defendant was responsible. And also, the trial court found the state's own identification witness completely incredible. Now, Your Honors, that was also because of the fact that the witness in that case crossed himself up multiple times as well as just completely recanted the testimony as well, or they had completely recanted the statement. Your Honors, in this case, these statements to police occurred 10 days after the shooting, and then again on September 2nd. They were close in time. And when the statement was given or this one affidavit was given to the defense counsel, the only thing that was changed in that statement was that he did not remember giving this statement to police and he did not see who shot him. Outside of those two changes, the factual recitation by the witness was exactly the same. And furthermore, Your Honors, that discrepancy was cleared up on the second day of trial by the witness when he stated that he was being intimidated, that he was being threatened, and he was also being bribed in order to change his testimony. And not only was it the defendants that were doing it, but there were other individuals who were trying and attempting to influence him. So, Your Honors, this is not a situation where the identification was done close in time and the changes were very minimal with regard to his testimony. Furthermore, Your Honors, this case is very similar to People v. Thomas. In People v. Thomas, which is 354 LF 3rd at 868, the witness in that case testified at his own trial. Well, initially he had a statement to police identifying the defendant and two other current defendants as the individuals who shot the victim, testified at his own trial in line with the statements that he had given to police, and then on the day of trial recanted his statement. Now, in that case, Your Honors, it was found that previous inconsistent statements alone, and this was one previous inconsistent statement, a solitary single previous inconsistent statement that was in and of itself given are sufficient to prove a defendant's guilt beyond a reasonable doubt. So, as you stand here, do you know of any cases to the contrary? Is that the law in Illinois? Yes, Your Honor. That is the law. You are correct. Thank you. And there is, at this point in time, that it's the trial court's duty, and that when the guilty verdict is based on a prior inconsistent statement, the reviewing court need not, and in fact may not, determine whether or not the witness's testimony was substantially corroborated or clearly convincing. It's for the trial court to do that, Your Honors. The trial court observed the witnesses, heard the testimony surrounding the witness's identification, and was able to take the statement given by the witness and evaluate it in light of the testimony that it gave before the trial court at that time. Now, Your Honors, the trial court, in this situation, looked at the testimony given by the victim, Harris, and said that it just did not believe the testimony that Harris gave on the first day of trial. It didn't believe it. And it took note of the fact that the only thing that changed in that testimony was that he did not, he stated that he did not recall giving the statements to the police and to the state's attorney, and that he said that he did not see who shot him. Now, Your Honors, it makes sense that someone who's afraid would want to say that all of a sudden they didn't see, just because of the fact that they're afraid they're being intimidated. But, Your Honors, the arrest of the statement did not change. And furthermore, that statement by the victim identifying the defendant was additionally corroborated by the officers, as well as the state's attorneys. And that, I want the court to be crystal clear on, is proper. The trial court can consider statements of identification under 115.12. So, in a situation where a witness gives a statement of identification, identifying an individual, they can get on the stand and testify that on that date, that they identified the defendant and the co-defendant as the people who shot him. That's exactly what Harris did in this case. He got on the stand and testified to that. In addition to that, though, Your Honors, it is completely proper. For the police officers and the assistant state's attorneys, who observed and took these statements of identification by the defendant, to testify regarding those statements of identification. And that is completely proper in 115.12, which is, Your Honors, proved up by People v. Temple. And that's 2014 L.F. 1st 111653. And that's if you look to paragraphs 41 and 43. All right. Counselor, I have a sum-up then. Your Honors, looking at all the evidence, there was sufficient evidence to demonstrate that the defendant was convicted, beyond reasonable doubt, of a 10th-first-degree murder. And also, Your Honors, the evidence was properly admitted and properly presented before the trial court. And the court properly considered it. And as a result, the defendant's conviction should be affirmed at this point, Your Honors. And with that, if you would rest. Counsel, thank you. Five minutes for rebuttal. I'd like to first talk about the Thomas case. In that case, the prior disavowed statement was trial testimony. The witness was Henderson. Henderson went to his own trial and said, I didn't do anything wrong, but the defendant did. Thomas did. And then Thomas, and then Henderson came to Thomas' trial and said, changed it completely, did a 180 and said, he didn't do anything wrong. Crucial to the Thomas decision was the fact that a prior finder of fact had evaluated the testimony of Henderson and found it to be reliable and truthful. And so I submit that was the key to that decision. The second thing in that case was that it was clear the appellate court, this court, said Henderson was afraid of the defendant. Now, I understand in our case here, there are overtones of fear. But Harris' explanation did not make any sense. Harris is suggesting, well, I got paid off to testify the way I did on day one. Okay, well, Mr. Harris, if that's true, then you were done. If you're so afraid or whatever, then if that's true, you were done. So why did you come back on day two, setting aside the fact that he came back on day two and I looked at this and I thought, I've never seen such a do-over. And I thought, well, maybe I'm not experienced enough. And then I looked at the prosecutor and the prosecutor said, I've never seen this happen before, which made me feel bad. This was crazy. So after that, we look at Harris. There's no evidence he was afraid of the defendant. In fact, I submit to you, Mr. Harris, who'd shot at Mr. Fountain twice, was not afraid. So it is not like the Thomas case. There was no prior finder of fact. There was no evidence of fear, even though we tend to think there's this overtone here that this was a drive-by shooting, but that doesn't mean Fountain did it. And then counsel's recitation of the facts, I just did find the size of what the trial court said about the facts, because these facts he elicited were from Mr. Harris. And after the trial, or during the trial, when talking about the proposed cross-examination, the judge said, he admitted to lying, counsel. I think there's that testimony on the record that he lied under oath yesterday. I don't know why you need to go into other instances where it may affect his credibility. Well, I agree, Judge. We can't believe a thing he says. But later on, you're going to say you believe his prior statement. You can't bar me from you shouldn't have argued then, because that says to me you're discarding Harris. And you didn't discard Harris. You chose to believe his prior statement. On the motion, a post-trial motion about the cross-examination, the judge said it certainly was not admissible. The victim's testimony was thoroughly discredited, and it was a bench trial. And the court was thoroughly convinced that he was discredited. Then how, Your Honor, can you give credence to his prior statement? As to Your Honor's ask, was there an offer of proof? There was not an offer of proof in a sense that the defense counsel didn't say, I would like to now say what we would prove by going into this cross-examination. I submit to you there was enough of an offer of proof because this came about by the prosecution filing a motion initially saying we want to preclude evidence that Harris shot a defendant twice. So there was an agreement. It did happen. Now, prior to trial, the parties did agree to bar that evidence. It was only after Mr. Harris came forward surprisingly and implicated the defendant that the defense counsel appropriately then said, well, I now want to go into this and tell the story of what happened. And it makes no difference, I submit, what the timing of it was. If I'm on trial for murder and I see the guy testifying against me who shot at me twice, I think that really should come in to show what more of a bias could there be when we talk about the confrontation clause and the wide latitude that should be allowed. So for these reasons, Your Honors, we ask that our argument that Mr. Fountain was not accountable should be accepted and Mr. Fountain's conviction should be vacated. In the event this Court sees fit and finds that the only error was the limitation on cross-examination, we ask that the case, the conviction be vacated and the cause remanded. Thank you, Your Honors. Gentlemen, thank you very much for your presentation here today. We'll take this case under advisement. Thank you.